IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| Hus Hari Buljic individually and as Administrator of the Estate of Sedika Buljic, Honario Garcia individually and as Administrator of the Estate of Reberiano Leno Garcia, and Arturo de Jesus Hernandez and Miguel Angel Hernandez as Co-Administrators of the Estate of Jose Luis Ayala, Jr., <br><br>       Plaintiffs, <br><br>vs. <br><br>Tyson Foods, Inc., Tyson Fresh Meats, Inc., John H. Tyson, Noel W. White, Dean Banks, Stephen R. Stouffer, Tom Brower, Mary A. Oleksiuk, Elizabeth Croston, Tom Hart, Hamdija Beganovic, James Cook, Ramiz Muheljic, Gustavo Cabarea, Pum Pisng, Alex Buff, Walter Cifuentes, Muwi Hlawnceu, Cody Brustkern, Mark Smith, and John/Jane Does 1-10, <br><br>       Defendants. | CASE NO. _____ <br><br>**JOINT NOTICE OF REMOVAL** |

**JOINT NOTICE OF REMOVAL**

  Tyson Foods, Inc. and Tyson Fresh Meats, Inc. (collectively "Tyson") jointly remove this civil action under 28 U.S.C. §§ 1331, 1441, 1442, and 1446. This Court has subject matter jurisdiction, and the case is removable because:

  (1) Plaintiffs' Petition at Law and Demand for Jury Trial ("Petition") challenges actions taken by Tyson at the direction of a federal officer, for which Tyson will have a colorable federal defense (28 U.S.C. § 1442(a)(1)); and

(2) The Petition raises substantial and disputed issues of federal law under the Defense Production Act that must be decided by a federal forum (28 U.S.C. § 1331(a)(1)).

Removal is timely. The Petition was filed in state court on June 25, 2020. Neither Tyson nor any other defendant has been served. *See* 28 U.S.C. § 1446(b)(1); *Murphy Brothers v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999); *Novak v. Bank of New York Mellon Tr. Co., NA.*, 783 F.3d 910, 914 (1st Cir. 2015) (holding that "formal service is not generally required before a defendant may file a notice of removal") (collecting cases).

Tyson provides the following short and plain statement of the grounds for removal:

## BACKGROUND

The United States continues to struggle with a global pandemic whose size and scope are without modern precedent. Millions have been infected with the novel coronavirus, and nearly 150,000 Americans have died of COVID-19. The economic and human fallout from the pandemic has been severe. This case is brought by relatives of three individuals—Sedika Buljic, Reberiano Leno Garcia, and Jose Luis Ayala, Jr.—who allege that they worked at a Tyson pork-processing facility; that they contracted COVID-19 at work; and that they later died of the disease. Those deaths were a tragedy.

But Plaintiffs' allegations—including allegations of willful misconduct directed not only against Tyson, but also against more than a dozen Tyson employees—are inaccurate and incorrect, and Tyson vigorously disputes Plaintiffs' claims. Tyson has worked from the very beginning of the pandemic to follow federal workplace guidelines and has invested millions of dollars to provide employees with safety and risk-mitigation equipment. Tyson's efforts to protect its workers while continuing to supply Americans with food in the face of the pandemic continue to this day.

Removal is proper, because federal court is the correct forum for resolving Plaintiffs' claims. The Petition alleges in effect that Tyson should have shut down its facility in Waterloo, Iowa during the COVID-19 pandemic. But that facility—one of the largest pork-processing plants in the country—was operating pursuant to the President of the United States' authority to order continued food production and under the direct supervision of the U.S. Secretary of Agriculture. As the President emphasized, "[i]t is important that processors of beef, pork, and poultry . . . in the food supply chain continue operating and fulfilling orders to ensure a continued supply of protein for Americans," and any "closures [of such facilities] threaten the continued functioning of the national meat and poultry supply chain" and "undermin[e] critical infrastructure during the national emergency." *Executive Order on Delegating Authority Under the DPA with Respect to Food Supply Chain Resources during the National Emergency Caused by the Outbreak of COVID-19* ("Food Supply Chain Resources"), 85 Fed. Reg. 26,313, 26,313, 2020 WL 2060381, at *1 (Apr. 28, 2020). The President and the U.S. Secretary of Agriculture provided detailed instruction for meat-processing facilities to continue operating, incorporating industry-specific guidance from the Centers for Disease Control and Prevention ("CDC") and the Occupational Safety and Health Administration ("OSHA").

Because Tyson was under a Presidential order to continue operations pursuant to the supervision of the federal government and pursuant to federal guidelines and directives, including directives from the Secretary of Agriculture and guidance from the CDC and OSHA, federal court is the proper forum for resolving this case.

## ARGUMENT

### I. Federal officer removal is proper under 28 U.S.C. § 1442(a)(1).

Under 28 U.S.C. § 1442(a)(1), a civil action may be removed to federal court if the action is asserted against a person acting under the direction of a federal officer:

> A civil action . . . that is against or directed to any of the following may be removed . . . :
>
> (1) The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.

28 U.S.C. § 1442(a)(1) (emphasis added).

Here, federal officer removal is proper because (1) Tyson "acted under the direction of a federal officer," (2) "there was a causal connection between [Tyson's] actions and the official authority," (3) Tyson "has a colorable federal defense to the plaintiff's claims," and (4) Tyson "is a 'person,' within the meaning of the statute." *Jacks* v. *Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012) (citing *Dahl* v. *R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 967 n.2 (8th Cir. 2007)).

**Federal Direction**. On March 13, 2020, the President declared "a National Emergency in response to the COVID-19 outbreak." [Petition ¶ 51] Soon after, on March 16, the President issued "Coronavirus Guidelines" that emphasized that employees in "critical infrastructure industr[ies]"—including companies like Tyson that are essential to maintaining food-supply chains and ensuring the continued health and safety of all Americans—have a "special responsibility to maintain [their] normal work schedule." Exec. Office of Pres., *The President's Coronavirus Guidelines for America* at 2 (Mar. 16, 2020).[1] On March 24, President Trump approved a major disaster declaration under the federal Stafford Act for the State of Iowa in response to the COVID-19 outbreak. [Petition ¶ 55]

On April 28, consistent with the directions in March and precisely because of attempts by localities to countermand federal directions, President Trump issued an executive order. This time expressly invoking his authority under the Defense

---

[1] https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf.

Production Act ("DPA"), the President again instructed that Tyson and other meat and poultry processing companies to stay open and continue operations, subject to the supervision of the Secretary of Agriculture. *See* Petition ¶ 89; *Food Supply Chain Resources*, 85 Fed. Reg. at 26,313, 2020 WL 2060381, at *1. The executive order states in relevant part:

> It is important that processors of beef, pork, and poultry ("meat and poultry") in the food supply chain **continue operating and fulfilling orders** to ensure a continued supply of protein for Americans.… [R]ecent actions in some States have led to the complete closure of some large processing facilities.
>
> \* \* \*
>
> Such closures **threaten the continued functioning** of the national meat and poultry supply chain, undermining critical infrastructure during the national emergency.
>
> \* \* \*
>
> [T]he Secretary of Agriculture shall take all appropriate action … to **ensure that meat and poultry processors continue operations** consistent with the guidance for their operations jointly issued by the CDC and OSHA.

*Id.* (emphases added).

U.S. Secretary of Agriculture Sonny Perdue then promptly issued two letters: one to meat and poultry processing companies directing them how to proceed, and one to state and local officials across the nation informing them of the Secretary's actions and their obligation to work with the Secretary to ensure meat processing companies' compliance with the Secretary's directives. *See* U.S. Dep't of Agriculture, Press Release No. 0243.20 (May 6, 2020) (announcing that the Secretary had issued a "Letter to Governors" and "Letter to Stakeholders"). Relevant here, Secretary Perdue's Letter to Governors states:

- 5 -

Case 6:20-cv-02055-KEM   Document 1   Filed 07/27/20   Page 5 of 16

> Effective immediately, **I have directed meat and poultry processors to utilize the guidance** issued on Sunday, April 26, 2020, by CDC and OSHA specific to the meat and poultry processing industry to implement practices and protocols for staying operational or resuming operations while safeguarding the health of the workers and the community.
>
> \* \* \*
>
> The U.S. Department of Agriculture (USDA) has also **directed meat and poultry processing plants** currently closed and without a clear timetable for near-term reopening to submit to USDA written documentation of their protocol, developed based on the CDC/OSHA guidance, and **resume operations as soon as they are able** after implementing the CDC/OSHA guidance for the protection of workers.

U.S. Dep't of Agriculture, Letter to Governors (May 5, 2020) (emphases added)[2]; *see also* U.S. Dep't of Agriculture, Letter to Stakeholders (May 5, 2020).[3]

The U.S. Department of Agriculture also entered into a Memorandum of Understanding with the U.S. Food and Drug Administration ("FDA") setting forth the respective roles of each agency in utilizing the DPA to regulate food producers during the COVID-19 outbreak. *See Memorandum of Understanding Between FDA and USDA Regarding the Potential Use of the Defense Production Act with Regard to FDA-Regulated Food During the COVID-19 Pandemic* (May 18, 2020).[4] Notably, the agreement reiterated that "actions by States or localities could lead to the closure of food resource facilities"; such closures "could threaten the continued functioning of the national food supply chain, undermining critical infrastructure during the national emergency"; and the Department of Agriculture retained "*exclusive delegated authority*" under the DPA to issue orders regarding domestic food producers. *Id.* at 1–2, 4 (emphasis added).

---

[2] https://www.usda.gov/sites/default/files/documents/governor-letters-covid.pdf.
[3] https://www.usda.gov/sites/default/files/documents/stakeholder-letters-covid.pdf.
[4] https://www.usda.gov/sites/default/files/documents/mou-between-fda-usda-dpa.pdf.

- 6 -

Accordingly, Tyson was operating its facilities—including the Waterloo facility—as critical infrastructure of the United States that had been instructed by the President to continue operations both before and after the *Food Supply Chain Resources* executive order and the Secretary of Agriculture's related orders. As such, Tyson was "acting under the direction of a federal officer," 28 U.S.C. § 1442(a)(1), and "helping the Government to produce an item that it needs" for the national defense under the DPA, *Watson* v. *Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007); *see also Camacho* v. *Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486-87 (1st Cir. 1989) (holding that "the reach of section 1442(a)(1) extends to private persons . . . . who act under the direction of federal officers," including companies ordered to "facilitate" or "offe[r] technical assistance" to federal agents exercising statutory authority). Moreover, under the terms of the *Food Supply Chain Resources* executive order, Tyson was acting under the direct supervision of the Secretary of Agriculture, who was delegated power by the President to "take all appropriate action . . . to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA." 85 Fed. Reg. at 26,313, 2020 WL 2060381, at *1.

The Petition challenges Tyson's refusal to "cease operations" and the various measures that were taken at the Waterloo facility. [*See, e.g.*, Petition ¶¶ 68 ("Black Hawk County officials asked Tyson to temporarily shut down the plant. Again, the company refused."), 70, 71 ("Tyson refused to close the plant . . . .")] But those actions were taken pursuant to the authority, orders, detailed regulation, and supervision of the President and Secretary of Agriculture under the DPA. Tyson was therefore "acting under" federal officers. 28 U.S.C. § 1442(a)(1).

**Causal Connection**. There is a causal connection between the Petition's allegations and the actions Tyson took at the direction of the President and Secretary of Agriculture. As noted above, the Petition alleges that Tyson is liable in tort for not

shutting down the Waterloo facility, (¶¶ 68, 70, 71, 84), even though federal officers directed Tyson to continue operations. Likewise, the Petition challenges specific measures that Tyson adopted or allegedly failed to adopt in response to the coronavirus. [*See, e.g.*, ¶¶ 60-61, 63, 70, 73] But the measures that Tyson took were implemented at the express direction of federal officers. And any dispute about the scope of Tyson's authority to implement those measures under the federal directives "is one for the federal—not state—courts to answer." *Isaacson* v. *Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008) (federal courts must resolve "whether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government") (citing *Willingham* v. *Morgan*, 395 U.S. 402, 409 (1969)).

**Colorable Federal Defenses**. Tyson has at least the following federal defenses to the claims in the Petition.

- **Express preemption under the Federal Meat Inspection Act ("FMIA").** The FMIA's express preemption clause preempts state-law requirements that are "in addition to" or "different from" the rigorous and extensive federal requirements under the FMIA. *See* 21 U.S.C. § 678; *see also, e.g.*, 9 C.F.R. § 416.5(c) (setting federal requirements under the FMIA regarding cleanliness, protective attire, and "disease control"). As construed by the Supreme Court, "[t]he FMIA's preemption clause sweeps widely" and "prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the Act." *Nat'l Meat Ass'n* v. *Harris*, 565 U.S. 452, 459-60 (2012). Plaintiffs here would use state tort law to impose additional and different requirements.

- **Preemption under the DPA and the Executive Order.** Plaintiffs' claims are also preempted by the DPA and the President's *Food Supply Chain Resources* executive order and related federal directions. Congress enacted the DPA to preserve "the security of the United States" by ensuring "the ability of the domestic industrial base to supply materials and services for the national defense and to prepare

for and respond to . . . natural or man-caused disasters." 50 U.S.C. § 4502(a)(1). The DPA grants the President wide latitude to "take appropriate steps" to maintain and enhance the "domestic critical infrastructure" threatened by "emergency conditions." *Id.* §§ 4502(a)(2)(C), (4). This broad grant of authority preempts any attempt by a state to impose its own regulations on "domestic critical infrastructure" industries when the President has done so under the DPA, 50 U.S.C. § 4502(a)(2)(C); *see also Crosby* v. *Nat'l Foreign Trade Council*, 530 U.S. 363, 376 (2000), and provides defenses against suits like this for actions taken in compliance with orders issued under the DPA. *See* 50 U.S.C. § 4557. The Petition here seeks to impose state regulation that conflicts with the President's express directives under the DPA requiring Tyson to assist the nation during a national disaster by (1) continuing to operate (2) pursuant to federal operational requirements.

**The Tyson entities are "persons."** Tyson is a "person" under 28 U.S.C. § 1442 because the term "includes corporations." *Jacks*, 701 F.3d at 1230 n.3 (citing *Watson*, 551 U.S. 142, 152-53 (2007)).[5]

## II. The Court also has federal question jurisdiction.

This case is properly removed under 28 U.S.C. § 1331 because it "aris[es] under" federal law. *See Wullschleger* v. *Royal Canin U.S.A., Inc.*, 953 F.3d 519, 521 (8th Cir. 2020). Although Plaintiffs' causes of action are styled as state-law claims, this Court has federal question jurisdiction because the claims (1) "necessarily" raise an issue of federal law that is (2) "actually disputed" and (3) "substantial," (4) "which a

---

[5] Because Tyson is entitled to remove this case under 28 U.S.C. § 1442(a)(1), "the entire case [is] deemed removable, such that [Plaintiffs'] claims against all other defendants . . . will be heard in federal court as well." *Morgan* v. *Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018); *see also* Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3726 (Rev. 4th ed.) ("Because Section 1442(a)(1) authorizes removal of the entire action even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction.").

federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

**Federal issues are necessarily raised.** The Petition necessarily raises multiple, substantial federal issues. The entire thrust of the Petition is that Tyson should not have complied with express federal directives related to the national defense (*i.e.*, should have shut down (*see* Petition ¶¶ 68, 70, 71, 84); should have taken more or different measures than were mandated by the federal directives (*e.g.*, *id.* ¶¶ 59-60); or violated federal law by allegedly failing to take certain precautions (*e.g.*, *id.* ¶¶ 119(aa), 135(aa))). None of these claims can be resolved "without reliance on and explication of federal law." *Wullschleger*, 953 F.3d at 522. To the contrary, these federal issues are plainly and necessarily raised by the Petition (*e.g.*, Petition ¶¶ 47, 51, 55, 89 (citing the *Food Supply Chain Resources* executive order)), and they permeate every aspect of Plaintiffs' claims—from the equipment Tyson allegedly provided (*e.g.*, *id.* ¶¶ 59-60 (criticizing Tyson's failure to provide masks in accordance with "CDC" guidance), 119(aa) (alleging the defendants failed to abide by "Federal rules, regulations, and guidance")), to Tyson's continued operation despite local authorities' requests for Tyson to close (*e.g.*, *id.* ¶ 66 ("[L]ocal officials lobbied Tyson to close the plant, but the company refused.")). Having "elected to premise" their claims on "interpretations of federal law," Plaintiffs cannot avoid this Court's jurisdiction. *See Wullschleger*, 953 F.3d at 522.

**The federal issues are "substantial."** The Petition implicates federal imperatives of the highest and broadest importance: coordination of national disaster relief and the maintenance of infrastructure "essential to the national defense." 50 U.S.C. § 4511(b); *see also Scrogin* v. *Rolls-Royce Corp.*, No. 3:10cv442 (WWE), 2010 WL 3547706, at *3 (D. Conn. Aug. 16, 2010) ("[P]laintiffs' state tort claims give rise to serious federal interests in the government procurement contract and military

operations."); *McMahon* v. *Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1201–02 (M.D. Fla. 2006) (holding that "the federal issues [were] quite substantial" where national defense and procurement were implicated).

There is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum" for these claims. *Grable*, 545 U.S. at 313; *see also Rose* v. *SLM Fin. Corp.*, Civil Action No. 3:05CV445, 2007 WL 674319, at *4 (W.D.N.C. Feb. 28, 2007) ("Where a federal regulatory scheme requires private parties to undertake certain actions in order to comply with the law, the federal courts necessarily have a serious interest in examining the scope of liability that might arise as a result.").

**Actual dispute.** The federal interests are also actually disputed. *See Wullschleger*, 953 F.3d at 522 (finding federal issues actually in dispute where the plaintiffs "explicitly claim[ed] that defendants violated the FDCA, were non-compliant with FDA guidance, and that their refusal to [seek] FDA review was improper"). The Petition seeks to impose state-law liability on Tyson for actions taken pursuant to federal statutes and orders, and the Petition's overarching theory is that Tyson allegedly failed to comply with federal guidance in some respects and should have exceeded (or otherwise deviated from) federal guidance in other respects. These issues— what was required under the *federal* orders and whether states can override the *federal* orders—constitute the central dispute in this case.

**Balance of responsibilities.** Finally, exercising jurisdiction over this case will not disturb—and, in fact, will preserve—the congressionally approved balance of federal and state judicial responsibilities. As explained above, through the DPA, Congress delegated to the President "an array of authorities" to "take appropriate steps to maintain" critical infrastructure—because the "national defense" and "security of the United States" depend upon it. 50 U.S.C. §§ 4502(a)(1), (4). Accordingly, there is a "clear interest" in "the availability of federal forum" for this case, which directly

- 11 -

challenges the President's orders under the DPA. *Grable*, 545 U.S. at 319. And exercising jurisdiction over Plaintiffs' claims "would not materially affect, or threaten to affect, the normal currents of litigation," *id.*, given the "rare" circumstances here: the federal government directing a select group of critical companies' operations to maintain the nation's food supply during a global pandemic unprecedented for perhaps over a century.

### III. Tyson has satisfied the procedural requirements for removal.

#### A. Removal is timely.

Pursuant to 28 U.S.C. § 1446(b), a defendant must remove an action within thirty days after being properly served and receiving a copy of the complaint, *see Murphy Brothers*, 526 U.S. 344, and a defendant *may* remove a case prior to such service, *see Novak*, 783 F.3d at 914; *La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 97 (2d Cir. 2014) ("Service of process upon a removing defendant is not a prerequisite to removal."). Plaintiffs filed their Petition in state court on June 25, 2020. *See* Exhibit A. Plaintiffs have not yet served any of the Defendants. As a result, this Notice of Removal is timely.[6]

#### B. This is the proper venue.

The United States District Court for the Northern District of Iowa, Eastern Division, embraces the county in which the state court action is now pending. Therefore, this action is properly removed to this Court pursuant to 28 U.S.C. §§ 95(a)(2) and 1441(a).

---

[6] Counsel for Tyson has been informed that Plaintiffs intend in the near term to file an amended petition. Counsel for Plaintiffs agreed to extend the date for Defendants to file a responsive pleading to the Petition to August 21, 2020.

- 12 -

## C. All other procedural requirements have been met.[7]

There are no pending motions in the state court action. LR 81(a)(2).

Pursuant to Local Rule 81(a)(3), a complete list of all counsel and law firms that have appeared in the action being removed, including each attorney's office address, telephone number, facsimile number, e-mail address, and the names of the parties they represent follows:

(a) Thomas P. Frerichs (AT0002705)
**Frerichs Law Office, P.C.**
106 E. 4th Street, P.O. Box 328
Waterloo, Iowa 50704-0328
Telephone: 319.236.7204
Facsimile: 319.236.7206
Email: tfrerichs@frerichslaw.com

John J. Rausch (AT0006398)
**Rausch Law Firm, PLLC**
3909 University Ave., P.O. Box 905
Waterloo, Iowa 50704-0905
Telephone: 319.233.35557
Facsimile: 319.233.3558
Email: rauschlawfirm@dybb.com

Mel C. Orchard, III (*pro hac vice* pending)
G. Bryan Ulmer, III (*pro hac vice* pending)
Gabriel Phillips (*pro hac vice* pending)
**The Spence Law Firm, LLC**
15 S. Jackson Street
P. O. Box 548
Jackson, Wyoming 83001

---

[7] Tyson need not obtain consent from the other Defendants to remove. *See* 28 U.S.C. § 1446(b)(2)(A). First, this action is not "removed solely under section 1441(a)"; it is also removed under § 1442(a)(1). Second, consent is not required from defendants that have not yet been served. *See Couzens v. Donohue*, 854 F.3d 508, 514 (8th Cir. 2017) ("Generally, each defendant must consent to removal within thirty days after being served with the initial pleading.") Finally, even if the other Defendants had been served, Tyson need not obtain their consent to remove under § 1442(a)(1). *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) ("[A] federal officer or agency defendant can unilaterally remove a case under section 1442[.]") (internal citations omitted).

Telephone: 307.337.1283
Facsimile: 307.337.3835
Email: orchard@spencelawyers.com
ulmer@spencelawyers.com
phillips@spencelawyers.com

*Counsel for Plaintiffs*

(b) Kevin J. Driscoll (AT0002245)
**Finley Law Firm, P.C.**
699 Walnut Street, Suite 1700
Des Moines, Iowa 50309
Telephone: 515.288.0145
Facsimile: 515.288.2724
Email: kdriscoll@finleylaw.com

Mary Gaston (*pro hac vice* forthcoming)
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: MGaston@perkisncoie.com

Christopher S. Coleman (*pro hac vice* forthcoming)
**Perkins Coie LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: 602.351.8000
Facsimile: 602-648.7000
Email: CColeman@perkinscoie.com

*Counsel for Tyson*

No process, pleadings, or orders have been served upon Tyson in the state action, but copies of all such documents are attached hereto as Exhibit A. *See* 28 U.S.C. § 1446(a).

Pursuant to 28 U.S.C. § 1446(d), Tyson will promptly provide written notice of this filing to all adverse parties and will file a copy of this Notice of Removal with the clerk of the state court where this suit is currently pending.

- 14 -

Case 6:20-cv-02055-KEM   Document 1   Filed 07/27/20   Page 14 of 16

## CONCLUSION

For the foregoing reasons, Tyson respectfully removes this action bearing case number LAW NO. LACV140521, from the District Court for Black Hawk County, Iowa, pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446.

/s/ Kevin J. Driscoll
Kevin J. Driscoll    AT0002245
**FINLEY LAW FIRM, P.C.**
699 Walnut Street, Suite 1700
Des Moines, Iowa 50309
Telephone: 515-288-0145
Facsimile: 515-288-2724
Email:         kdriscoll@finleylaw.com

ATTORNEYS FOR DEFENDANTS
TYSON FOODS, INC. AND TYSON
FRESH MEATS, INC.

# CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2020, I have mailed by United States Postal Service and have emailed the documents to the following:

>Thomas P. Frerichs
>**Frerichs Law Office, P.C.**
>106 E. 4th Street, P.O. Box 328
>Waterloo, Iowa 50704-0328
>319.236.7204 / 319.236.7206 (fax)
>tfrerichs@frerichslaw.com
>
>John J. Rausch
>**Rausch Law Firm, PLLC**
>3909 University Ave., P.O. Box 905
>Waterloo, Iowa 50704-0905
>319.233.35557 / 319.233.3558 (fax)
>rauschlawfirm@dybb.com
>
>Mel C. Orchard, III
>G. Bryan Ulmer, III
>Gabriel Phillips
>**The Spence Law Firm, LLC**
>15 S. Jackson Street
>P. O. Box 548
>Jackson, Wyoming 83001
>307.337.1283 / 307.337.3835 (fax)
>orchard@spencelawyers.com
>ulmer@spencelawyers.com
>phillips@spencelawyers.com
>
>*Attorneys for the Plaintiffs*

/s/ Leah Swanson