IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| HUS HARI BULJIC INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF SEDIKA BULJIC, HONARIO GARCIA INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF REBERIANO LENO GARCIA, AND ARTURO DE JESUS HERNANDEZ AND MIGUEL ANGEL HERNANDEZ AS CO-ADMINISTRATORS OF THE ESTATE OF JOSE AYALA, <br><br> PLAINTIFFS, <br><br> v. <br><br> TYSON FOODS, INC., TYSON FRESH MEATS, INC., JOHN H. TYSON, NOEL W. WHITE, DEAN BANKS, STEPHEN R. STOUFFER, TOM BROWER, MARY A. OLEKSIUK, ELIZABETH CROSTON, TOM HART, HAMDIJA BEGANOVIC, JAMES COOK, RAMIZ MUHELJIC, GUSTAVO CABAREA, PUM PISNG, ALEX BUFF, WALTER CIFUENTES, MUWI HLAWNCEU, CODY BRUSTKERN, MARK SMITH, AND JOHN/JANE DOES 1-10, <br><br> DEFENDANTS. | Case No. 6:20-cv-02055-KEM <br><br><br> **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO REMAND** |

## SUMMARY

Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc. (collectively "Tyson") needlessly and knowingly exposed Sedika Buljic, Reberiano Garcia, and Jose Ayala to COVID-19. As a result, Ms. Buljic stopped working on April 14, 2020, and died four days later.[1] Mr. Garcia stopped working on April 11 and died twelve days later.[2] Mr. Ayala was hospitalized and intubated on April 13, and died on May 25 after six weeks on life-support.[3]

---

[1] Ex. A, Buljic Affidavit.
[2] Ex. B, Garcia Affidavit.
[3] Ex. C, Hernandez Affidavit.

Tyson asserts that this case is removable on the basis of a Presidential Executive Order issued on April 28, 2020. According to Tyson, removal is proper because: (1) Plaintiffs' "challenge actions taken by Tyson at the direction" of the April 28 Executive Order, and (2) Plaintiffs' "Petition raises substantial and disputed issues of federal law under the Defense Production Act," which was enacted under the April 28 Order.[4] Both assertions rest on the same flawed premise: that a Presidential Executive Order issued on April 28, 2020 has any relation to or bearing on claims that accrued before the Order was issued. Because Ms. Buljic, Mr. Garcia, and Mr. Ayala all contracted the virus, stopped working, and were dead or dying weeks before the executive order was issued, Tyson has not and cannot demonstrate any of the decedents were sickened or died as a result of the Executive Order. Accordingly, removal was improper. It necessarily follows that this matter must be remanded.

## BACKGROUND

*Tyson's Tortious Conduct*

Ms. Buljic, Mr. Garcia, and Mr. Ayala are dead because of Tyson's incorrigible, willful and wanton disregard for workplace safety. Instead of educating employees about the dangers of COVID-19, Tyson warned them not to discuss the virus at work.[5] Instead of encouraging sick employees to stay home, Tyson offered $500 bonuses for perfect attendance.[6] Instead of pausing or slowing production, Tyson redirected hogs from a neighboring plant to the Waterloo Facility.[7] And instead of providing personal protective equipment or implementing safety measures to protect employees, Tyson aggressively lobbied President Trump and Vice President Pence for liability protections.[8]

---

[4] Doc. 1, Notice of Removal at 1-2.
[5] Petition at ¶ 78.
[6] *Id.* at ¶ 77.
[7] *Id.* at ¶ 62.
[8] *Id.* at ¶ 79.

*The Executive Order*

On April 28, 2020, President Trump issued an Executive Order "Delegating Authority Under the DPA with Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19."[9] Notwithstanding Tyson's assertion to the contrary, President Trump neither mandated nor forgave Tyson's reprehensible conduct. Rather than compel any action, the order merely: (1) declared that meat and poultry in the food supply chain fall under Section 101(b) of the Defense Production Act; and (2) delegated the president's Defense Production Act authority over the food supply chain to Secretary of Agriculture Sonny Perdue.[10] The order further instructed Secretary Perdue to take all appropriate actions "to ensure America's meat and poultry processors continue operations" consistent with guidance from the CDC and OSHA.[11] Subsequently, on May 5, 2020, Secretary Perdue issued a letter to meat processing companies declaring that meat processing plants "closed since Friday May 1, and without a clear timetable for near term resumption of operations, should submit written documentation of their operations and health and safety protocol" to the Department of Agriculture.[12] Neither President Trump nor Secretary Purdue mandated Tyson to keep the Waterloo Facility open.

## LEGAL STANDARD

**A.   The removing party bears the burden of establishing federal jurisdiction.**

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there." *In re Prempro Prods. Liab. Litig.,* 591 F.3d 613, 619 (8th Cir. 2010). "The party seeking removal to federal court bears the burden of demonstrating that removal was proper, even under the Federal Officer Removal Statute." *Graves v. 3M Co.*, No. CV 19-3094

---

[9] *See* White House Presidential Actions, Executive Orders (April 28, 2020), *available at* https://www.whitehouse.gov/presidential-actions/executive-order-delegating-authority-dpa-respect-food-supply-chain-resources-national-emergency-caused-outbreak-covid-19/.
[10] *Id.*
[11] *Id.*
[12] USDA Letter to Stakeholders (May 5, 2020), *available at* https://www.usda.gov/sites/default/files/documents/stakeholder-letters-covid.pdf.

(JRT/KMM), 2020 WL 1333135, at *3 (D. Minn. Mar. 23, 2020) (citing *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 181 n.13 (8th Cir. 1978)). "This burden is met by a substantial factual showing that supports candid, specific and positive allegations." *Bd. of Cty. Commissioners of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792, 819 (10th Cir. 2020) (internal quotations and citations omitted). "[A]ll doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.,* 561 F.3d 904, 912 (8th Cir. 2009).

<u>ARGUMENT AND AUTHORITIES</u>

A. **Federal officer removal is improper because Tyson failed to identify any federal directive that existed at the time decedents were working for Tyson, failed to establish causation between a directive and the company's tortious conduct, and failed to raise a colorable federal defense.**

A defendant corporation seeking federal officer removal must demonstrate that: (1) it was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (2) there is a causal connection between the official authority and the defendant's actions; and (3) it has a "colorable" federal defense to state-law liability. *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012).

   1. **Tyson was not "acting under" the direction of a federal officer when it engaged in tortious conduct giving rise to Plaintiffs' claims.**

The Federal Officer Removal Statute "permits removal only if [the defendant], in carrying out the 'act[s]' that are the subject of the petitioners' complaint, was 'acting under' any 'agency' or 'officer' of 'the United States.'" *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007) (alteration in original) (quoting 28 U.S.C. § 1442(a)(1)). Tyson argues that it "acted under" the direction of a federal officer under the following theory: President Trump's April 28 Executive Order "instructed that Tyson and other meat and poultry processing companies to [*sic*] stay open

and continue operations, subject to the supervision of the Secretary of Agriculture."[13]  In other words, Tyson would have this Court believe that it had no choice but to maintain uninterrupted operations at the Waterloo Facility—even in the face of an uncontrolled COVID-19 outbreak at the plant—because the company was federally mandated to do so.  This argument fails for a litany of reasons.

First, Plaintiffs did not sue Tyson for actions taken subsequent to President Trump's April 28 Executive Order.  Plaintiffs sued Tyson for needlessly and knowingly infecting Ms. Buljic, Mr. Garcia, and Mr. Ayala with COVID-19 during the first half of April (all three were infected and stopped working on or before April 14).  Accordingly, Tyson must establish that it was "acting under" a federal officer during the period of time the decedents were still working at the Waterloo Facility.  *Id.*  Whether or not Tyson was acting under a federal officer as of April 28 is wholly irrelevant to Plaintiffs' claims.[14]

Second, Plaintiffs did not sue Tyson (or any other Defendant) for failing to shut down the Waterloo Facility.  Plaintiffs sued Tyson for fraudulent misrepresentation and seek to hold the company vicariously liable for its executives and managers' gross negligence.  Plaintiffs specifically contend that Tyson's executives and managers violated their duty through twenty-nine acts and omissions, none of which include failing to shut down the facility.[15]  The Petition only references Tyson's "prolonged refusal to temporarily close down" the facility as "evidence of Tyson's incorrigible, willful and wanton disregard for workplace safety and culpable state of

---

[13] Doc. 1 at 3.

[14]  Moreover, to the extent Tyson implies that it was acting under the direction of President Trump's March 16 "Coronavirus Guidelines" to employees (Doc. 1 at 4), this too is an insufficient basis for federal officer removal. It is well settled that "a private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Watson*, 551 U.S. at 143.

[15] Petition at ¶¶ 119 (a)-(cc),135 (a)-(cc)

mind."[16] Hence, the only action that Tyson claims to have taken at the direction of a federal officer (keeping the facility open) does not serve as a basis for Plaintiffs' claims.

Third, Tyson indefinitely suspended operations at the Waterloo Facility on April 22 and the plant remained closed until May 7.[17] Tyson's assertion, that it did not pause production because it was acting under President Trump's April 28 Executive Order, is blatantly false.

Fourth, a federal officer did *not* order Tyson to make fraudulent representations to its employees, prevent the company from providing employees with personal protective equipment, prohibit the company from implementing and enforcing social distancing measures, or forbid the company from implementing basic safety measures to protect its employees. Accordingly, federal officer removal is improper because Tyson was not "acting under" a federal officer when it exposed Ms. Buljic, Mr. Garcia, and Mr. Ayala to COVID-19. *See id.* (federal officer removal is allowed only if the defendant was "acting under" a federal officer when it committed the acts "that are the subject of the petitioners' complaint").

### 2. Tyson failed to demonstrate that the acts for which they were sued occurred because of what they were asked to do by the Government.

Even if Tyson could establish it was "acting under" President Trump's direct and detailed control, it must also prove a causal nexus between the President's April 28 Executive Order and the actions for which it is being sued. To establish causation, Tyson "must demonstrate that the acts for which they are being sued"—here, needlessly and knowingly exposing decedents to COVID-19—"occurred *because of* what they were asked to do by the Government." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d. Cir. 2008) (emphasis in original) (citing *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)). In other words, "**this element requires that the 'gravamen**

---

[16] *Id.* at ¶ 110.
[17] *Id.* at ¶¶ 84, 85, 90. Moreover, Tyson indefinitely suspended operation at its nearby Columbus Junction facility on April 6, 2020. *Id.* at ¶ 62.

of the claim against [the defendant] occur *while* it acted under color of federal authority.'" *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1096 (N.D. Ill. 2015) (emphasis added) (quoting *Ruppel v. CBS Corp.,* 701 F.3d 1176, 1181 (7th Cir. 2012)). Because Tyson unnecessarily and recklessly exposed Ms. Buljic, Mr. Garcia, and Mr. Ayala to COVID-19 weeks before April 28, there is no causal connection between Tyson's reprehensible conduct and the President's Executive Order. Tyson's actions subsequent to April 28 are irrelevant to Plaintiffs' claims. Therefore, federal officer removal is inappropriate.

Furthermore, to establish a sufficient nexus a defendant "must by direct averment exclude the possibility that [the state lawsuit] was based on acts or conduct of his not justified by his federal duty." *Mesa v. California*, 489 U.S. 121, 132 (1989). Not only has Tyson failed "by direct averment" to "exclude the possibility that" Plaintiffs' lawsuit "was based on acts or conduct" not justified by a federal duty, Tyson does not even acknowledge the fact that Plaintiffs' claims are based on alleged tortious acts committed in the first half of April. *Id.*

Tyson has unequivocally failed to demonstrate that the acts for which they were sued occurred because of what they were asked to do by the Government.

### 3. Tyson failed to articulate a colorable federal defense.

Federal officer removal "must be predicated on the allegation of a colorable federal defense." *Id.* at 129. A colorable federal defense "constitutes the federal law under which the action against the federal officer arises for Art. III purposes." *Id.* at 136. This is required because the statute itself does not create a federal question, but "merely serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Id*.

Tyson asserts two federal defenses: express preemption under the Federal Meat Inspection Act (FMIA); and ordinary preemption under President Trump's April 28 Executive Order and the Defense Production Act.[18] Neither constitutes a colorable federal defense.

First, Plaintiffs' claims did not arise under the FMIA, which "regulates a broad range of activities at slaughterhouses to ensure the safety of meat and the humane handling of animals." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 455 (2012). Ms. Buljic, Mr. Garcia, and Mr. Ayala were people—*not animals*. Consequently, the FMIA does not constitute a colorable federal defense. *See Mesa*, 489 U.S. at 129 (explaining that a colorable federal defense "constitutes the federal law under which the action against the federal officer arises.").

Moreover, the FMIA preempts states from regulating "the inspection, handling, and slaughter of livestock for human consumption." *Nat'l Meat Ass'n*, 565 U.S. at 455. It does <u>not</u> preempt wrongful death claims arising under state law. *See id.* at 467, n.10 (explaining that the FMIA does not preempt "state laws of general application [such as] workplace safety regulations, building codes, etc."). Finally, there is no private right of action under the FMIA, *Pacific Trading Company v. Wilson & Co., Inc.*, 547 F.2d 367 (7th Cir. 1976), and "complete preemption can only exist where…the federal statute provides a private right of action." *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 790 (7th Cir. 2002). The FMIA does not constitute a colorable federal defense.

Second, neither the Defense Production Act nor the President's April 28 Executive Order preempt Plaintiffs' claims. As previously stated, President Trump issued his Order invoking the DPA weeks after the decedents contracted COVID-19 and stopped working. Consequently, Plaintiffs' claims did not arise under the executive order or the DPA and both are wholly irrelevant

---

[18] Doc. 1 at 8.

to Plaintiffs' claims. Tyson cannot assert a colorable federal defense based on the President's Executive Order or the DPA because such a defense pertains to claims that simply do not exist.

In short, Tyson has not raised a colorable federal defense. Federal officer removal is improper and Tyson's assertion to the contrary is objectively unreasonable.

**B.      Removal is not warranted on the basis of federal question jurisdiction.**

Federal "jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005).

Here, Plaintiffs' causes of action are made entirely in terms of state law—specifically, for Iowa common law negligence and fraudulent misrepresentation. Thus, for federal question jurisdiction to arise, **resolution of Plaintiffs' state law claims must depend necessarily on a disputed and substantial question of federal law**, which a federal forum may entertain without disturbing the balance of federal and state judicial responsibilities. *Grable & Sons Metal Prods.* 545 U.S. at 313. Because Plaintiffs' common law tort claims do not create a substantial question of federal law, removal based on federal question jurisdiction is improper.

**1.      Tyson's attempt to transform this action into one arising under federal law violates the well-pleaded complaint rule.**

The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule. *Caterpillar*, 482 U.S. at 392. Here, Plaintiffs' Petition pleads only state law claims, none of which depend necessarily on a disputed and substantial question of federal law. While Tyson argues the "Petition raises substantial and disputed issues of federal law under the

Defense Production Act" and "implicates federal imperatives of the highest and broadest importance,"[19] removal is not appropriate under the well-pleaded complaint rule because these federal issues are not raised or at issue in Plaintiffs' claims. The "presence of a federal question…in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule." *Id.* at 399. Tyson cannot "merely by injecting a federal question into" Plaintiffs' state law claims, "transform the action into one arising under federal law." *Id.*

### 2. The DPA is irrelevant to Plaintiffs' claims.

Because Ms. Buljic, Mr. Garcia, and Mr. Ayala contracted COVID-19 and stopped working weeks before President Trump invoked the DPA, Plaintiffs' claims do not depend, in any way, on the interpretation or application of the DPA. It follows, therefore, that federal question jurisdiction does not exist. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vactation Trust*, 463 U.S. 1, 13 (1983) (It is not enough that "federal law becomes relevant only by way of a defense to an obligation created entirely by state law."). Tyson's assertion that Plaintiffs' state law claims cannot be resolved without interpreting a federal statute that was invoked <u>after</u> Plaintiffs' claims accrued is objectively unreasonable.

### 3. Plaintiffs' reference to federal guidance and regulations does not confer federal question jurisdiction.

Tyson also appears to argue that federal question jurisdiction is appropriate because Plaintiffs' Petition references Defendants' failure to comply with CDC guidance and OSHA regulations.[20] It is well settled, however, that **the "mere presence of a federal issue in a state cause of action does not confer federal question jurisdiction."** *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986) (emphasis added). Indeed, Courts have uniformly ruled that

---

[19] *Id.* at 2, 10.
[20] *Id.* at 10.

a plaintiff's reference to federal regulations within the context of state law negligence claims is insufficient to confer federal question jurisdiction. *See, e.g., Bowler v. Alliedbarton Sec. Servs., LLC*, 123 F. Supp. 3d 1152, 1158 (E.D. Mo. 2015) ("mere reference" to federal regulations in a state-law claim "is not sufficient to create federal question jurisdiction"); *Daniels v. Potomac Elec. Power Co.*, 789 F. Supp. 2d 161, 163 (D. D.C. 2011) ("Because OSHA does not provide a federal cause of action, and because alleged violations of OSHA were asserted by plaintiff simply to prove elements of a state common law claim, the Court concludes that [plaintiff's cause of action] does not arise under federal law."); *I.S. v. Washington University*, 2011 WL 2433585, *5 (E.D. Mo. Jun. 14, 2011) (no federal question jurisdiction where state law claim for negligence per se referred to HIPAA statute); *Goforth v. Nevada Power Co.*, 101 F. Supp. 3d 975, 979 (D. Nev. 2015) (finding no federal question jurisdiction "because proof of a violation of an OSHA regulation is not an essential element of any of Plaintiffs' claims"). Merely referencing federal regulations within the context of state law negligence claims does not confer federal question jurisdiction.

 Here, Plaintiffs referenced CDC guidance and OSHA regulations merely as standards upon which to measure Defendants' negligence. Plaintiffs do not claim relief under CDC guidance or OSHA regulations, but <u>solely</u> under Iowa tort law. Consequently, evidence of Defendants' compliance with these federal standards is merely one of many factors for a jury to consider in assessing Defendants' alleged breach of duty in this case. This is not enough to confer federal question jurisdiction. "For federal courts to have jurisdiction, the state law claim *must turn on* an 'actually disputed and substantial' issue of federal law." *Bender v. Jordan*, 623 F.3d 1128, 1130 (D.D.C. 2010) (emphasis added) (quoting *Grable,* 545 U.S. at 314). Because Plaintiffs' state law claims do not turn on interpretation of CDC guidance or OSHA regulations, removal is not warranted on the basis of federal question jurisdiction.


PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO REMAND — PAGE 11 OF 14
Case 6:20-cv-02055-LRR-KEM   Document 15-1   Filed 08/26/20   Page 11 of 14

C.   **Plaintiffs are entitled to attorneys' fees and costs.**

Courts may award attorney's fees under 28 U.S.C. § 1447(c) where the removing party lacked an objectively reasonable basis for seeking removal. *Convent Corporation v. City of North Little Rock Arkansas*, 784 F.3d 479, 482–83 (8th Cir. 2015) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005)).  Here, it was objectively unreasonable for Tyson to remove this case on the basis of an executive order issued *after* Plaintiffs' claims accrued.  Accordingly, Plaintiffs' respectfully request judgment imposing the costs and attorneys' fees associated with this proceeding.[21]

## CONCLUSION

Defendants have failed to satisfy their burden of establishing federal jurisdiction.  Under these circumstances, there is no basis for finding jurisdiction under the Federal Officer Removal Statute, no basis for finding federal question jurisdiction, and consequently—no basis for removing this case from state to federal court.  Plaintiffs respectfully urge the Court to grant Plaintiffs' Motion for Remand and to issue an award of attorneys' fees and costs associated with this proceeding.


DATED this 26th day of August 2020.

    _/s/ Thomas P. Frerichs_____
Thomas P. Frerichs (AT0002705)
Frerichs Law Office, P.C.
106 E. 4th Street, P.O. Box 328
Waterloo, IA 50704-0328
319.236.7204 / 319.236.7206 (fax)
tfrerichs@frerichslaw.com

---

[21] Plaintiffs' have incurred $662.07 in legal research expenses; and $10,875.00 in attorneys' fees (43.5 hours at $250 per hour).

John J. Rausch
Rausch Law Firm, PLLC
3909 University Ave., P.O. Box 905
Waterloo, IA 50704-0905
319.233.3557 / 319.233.3558 (fax)
rauschlawfirm@dybb.com

Mel C. Orchard, III
G. Bryan Ulmer, III
Gabriel Phillips
The Spence Law Firm, LLC
15 S. Jackson Street
P.O. Box 548
Jackson, WY 83001
307.337.1283 / 307.337.3835 (fax)
orchard@spencelawyers.com
ulmer@spencelawyers.com
phillips@spencelawyers.com

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of August 2020, a true and correct copy of the above and foregoing Plaintiffs' Brief in Support of Motion to Remand was served via CM/ECF Electronic Transmission on the following:

>Kevin J. Driscoll
>**Finley Law Firm, P.C.**
>699 Walnut Street, Suite 1700
>Des Moines, Iowa 50309
>Email: kdriscoll@finleylaw.com
>
>Christopher S. Coleman
>**Perkins Coie LLP**
>2901 N. Central Avenue
>Suite 2000
>Phoenix, Arizona 85012
>Email: CColeman@perkinscoie.com
>
>Mary Gaston
>**Perkins Coie LLP**
>1201 Third Avenue
> Suite 4900
>Seattle, Washington 98101-3099
>Email: MGaston@perkinscoie.com
>
>*Attorneys for Defendants Tyson Foods, Inc.*
>*and Tyson Fresh Meats, Inc.*

        /s/ Thomas P. Frerichs
    Thomas P. Frerichs
    Frerichs Law Office, P.C.