IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| Hus Hari Buljic individually and as Administrator of the Estate of Sedika Buljic, Honario Garcia individually and as Administrator of the Estate of Reberiano Leno Garcia, and Arturo de Jesus Hernandez and Miguel Angel Hernandez as Co-Administrators of the Estate of Jose Luis Ayala, Jr., <br><br>                      Plaintiffs, <br><br>   vs. <br><br>Tyson Foods, Inc., Tyson Fresh Meats, Inc., John H. Tyson, Noel W. White, Dean Banks, Stephen R. Stouffer, Tom Brower, Tom Hart, Cody Brustkern, John Casey, Bret Tapken, and James Hook, <br><br>                      Defendants. | Case No. 6:20-cv-02055-KEM |

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO STAY**

Defendants respectfully request a stay of the Court's December 28, 2020 remand order (Dkt. 57) until the resolution of Defendants' already docketed appeal of the order to the Eighth Circuit. Because this case was removed under 28 U.S.C. § 1442(a), Defendants have exercised their appeal as of right of the remand order under 28 U.S.C. § 1447(d). A stay pending that appeal is justified both because a stay is necessary to effectuate Congress's decision to grant an appeal as of right and because defendants readily satisfy the standard for a stay under *Nken v. Holder*, 556 U.S. 418, 425-26 (2009). This Court should accordingly grant a stay of the remand order pending the resolution of Defendants' appeal.[1]

## INTRODUCTION

This Court aptly described the "complexity and novel nature of this case" in its remand order (Dkt. 57 at 30). The issues presented here are complex. There is no doubt that federal officer removal is available to non-government entities acting at the direction of the federal government or that the federal government involvement here was substantial and eventually formalized. While this Court ultimately rejected the arguments for removal, they are plainly substantial. The issues presented here are likewise unquestionably novel. None of the cases cited in the briefing or in the remand order involves the extraordinary circumstances that Defendants confronted here: federal guidance and direction instructing Tyson to keep its plants operational in the earliest stages of a worldwide pandemic, leading up to an executive order under the Defense Production Act. As Defendants have explained, Tyson acted under

---

[1] The remand order is currently stayed automatically under Federal Rule of Civil Procedure 62(a) until January 27, thirty days after the order was issued. *See* Fed. R. Civ. P. 62(a) (automatically staying "execution on a judgment and proceedings to enforce it … for 30 days after its entry"); *see also* Fed. R. Civ. P. 54(a) (defining "judgment" to include any appealable order); *W. Va. State Univ. Bd. of Gov'rs v. Dow Chem. Co.*, 2020 WL 3053542, at *1 (S.D. W. Va. June 8, 2020) (recognizing that automatic stay under Rule 62(a) applies to remand orders in federal officer removal cases); *Tenn. ex rel. Slatery v. TVA*, 2018 WL 3092942, at *1 & n.3 (M.D. Tenn. June 22, 2018) (same); *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 2016 WL 3180775, at *1 (E.D. Va. June 7, 2016) (same).

extensive direction and guidance from the federal government—all the way up to the President and Vice President—beginning with the declaration of a national emergency on March 13, 2020 and culminating with the Defense Production Act order of April 28, 2020. No appellate court has yet resolved whether federal officer removal is proper under these circumstances, and Defendants have a statutory right to appeal this Court's resolution of that novel issue to the Eighth Circuit. That statutory right exists so that appellate courts can develop clear rules for federal officer removal and to ensure that cases that belong in federal court do not proceed in state court. That statutory right can be preserved only if federal courts grant stays pending appeal in cases like this one, which raise substantial and novel questions of federal officer removal.

A stay is also plainly warranted under the traditional four-factor *Nken* test. Although this Court has rejected Defendants' arguments, that is true whenever an appellant seeks a stay pending appeal, and the complex and novel nature of the issues here make Defendants reasonably likely to succeed on their appeal. Defendants would also face irreparable harm absent a stay, by being forced to litigate in multiple forums and give up their statutory right to raise their federal defenses in federal court. By contrast, there would be little harm to Plaintiffs in granting a stay because the appeal can proceed expeditiously and Plaintiffs can pursue (and are pursuing) their claims in Iowa Workers' Compensation in the meantime. And the public interest favors a stay to allow the Eighth Circuit to address the important issue presented here and avoid inconsistent rulings in the various cases across this circuit that raise this same question. This Court should therefore grant Defendants' motion and stay its remand order pending appeal.

## ARGUMENT

This Court has inherent authority to grant a stay of proceedings, *see, e.g.*, *Nken v. Holder*, 556 U.S. 418, 421 (2009), which includes the authority to "stay [the Court's]

remand order pending … appeal," *Fed. Home Loan Mortg. Corp. v. Grantz*, 568 F. App'x 482, 483 (8th Cir. 2014). Exercising this authority, courts have routinely stayed remand orders pending appeal where the defendant has a statutory right to appeal the order that would be frustrated in the absence of a stay, including when the defendant has invoked federal officer removal. *See, e.g., Lu Junhong v. Boeing Co.*, 792 F.3d 805, 808 (7th Cir. 2015); *Humphries v. Elliott Co.*, 760 F.3d 414, 416 (5th Cir. 2014). The same course is warranted here.

## I. A stay is necessary to effectuate Defendants' statutory right to appeal.

Under the express terms of 28 U.S.C. § 1447(d), Congress has granted defendants an explicit statutory right to appeal from any remand order rejecting removal on federal officer grounds. While remand orders generally are not appealable, Congress has specifically prescribed that a remand order in a case "removed pursuant to [28 U.S.C.] section 1442"—the federal officer removal statute—"shall be reviewable by appeal." 28 U.S.C. § 1447(d). That explicit rule makes clear beyond all doubt that Congress intended to give defendants that invoke federal officer removal an opportunity for federal appellate review of any order rejecting such removal. *Cf. Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("One of the primary purposes of the removal statute—as its history clearly demonstrates—was to have [federal officer] defenses litigated in the federal courts.").

Congress's decision to grant Defendants an express statutory right of appeal in this federal officer removal case can only be effectuated by granting a stay pending appeal. That explicit statutory right to federal appellate review of the remand order would be largely meaningless if Defendants were forced to continue litigating this case in state court, and endure the very harms that federal officer removal and the statutory appellate right are designed to avoid, while their appeal is pending. *See, e.g., Northrup Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 2016 WL 3346349

- 3 -

at *7 (E.D. Va. June 16, 2016) (granting stay pending appeal of remand order in federal officer removal case because denying stay "could render the appeal meaningless"); *see also Ind. State Dist. Council of Laborers & Hod Carriers Pension Fund v. Renal Care Grp., Inc.*, 2005 WL 2237598 (M.D. Tenn. Sept. 12, 2005) (statutory right to appeal remand order under Class Action Fairness Act "would be an empty one" absent stay pending appeal); *Vision Bank v. Bama Bayou*, LLC, 2012 WL 1592985, at *2 (S.D. Ala. May 7, 2012) (denying stay of remand order pending statutorily authorized appeal "would make the right of appeal nugatory").

Requiring Defendants to suffer the cost and inconvenience of parallel litigation in a different forum while their appeal here is pending would effectively deprive them of their clear federal right to appellate review of their claim to a federal forum. *See, e.g.*, *Northrop Grumman*, 2016 WL 3346349, at *3-4 (right to appeal would be "hollow" if defendant could be forced to "face the burden of having to simultaneously litigate the appeal … and the underlying case in state court"). As courts have recognized in comparable contexts, when the right asserted on appeal is a right not to have to litigate in a particular forum or at all, forcing such continued litigation pending appeal would destroy the very right that the right to appeal is intended to protect. *Cf., e.g., Div. of Employment Sec. v. Bd. of Police Comm'rs*, 864 F.3d 974, 978 (8th Cir. 2017) (right to qualified immunity "is effectively lost if a case is erroneously permitted to go to trial"); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004) (stay is always warranted pending appeal from denial of motion to compel arbitration). Moreover, failing to grant a stay despite the appellate right would prompt difficult questions about the effect of any state-court rulings made during the pendency of the federal appeal in the event of reversal. Congress obviously understood it was granting a right to appeal a remand order that is typically unappealable and typically ends federal jurisdiction over a case. Congress's considered decision to preserve federal jurisdiction by authorizing appeals from

- 4 -

remand orders in federal officer cases can only be given effect by granting a stay pending appeal when a substantial issue of federal officer removal is raised. While this Court ultimately rejected Defendants' argument for removal, there is no gainsaying that the arguments for removal here are novel and substantial. Thus, this Court should grant a stay pending appeal to effectuate the statutory right to appeal.

## II. Defendants have also met the traditional stay factors.

The traditional factors also strongly support a stay pending appeal. In determining whether to grant a stay pending appeal, courts consider four factors: "(1) the likelihood that a party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 423 (8th Cir. 1996); *see also Nken*, 556 U.S. at 425–26 (same). The court must "consider the relative strength of the four factors, balancing them all." *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011) (citations omitted).

Each of the four factors favors granting a stay of the remand order, and the balancing of all four favors a stay.

### A. Defendants have a reasonable likelihood of success regarding the novel issues presented in an appeal.

First, Defendants have a reasonable likelihood of success on the merits. To satisfy that factor, appellants need not show the district court that just ruled against them that it is more likely than not they will prevail on the merits; instead, they need only show "a fair chance of prevailing." *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1045 (8th Cir. 2020) (internal quotation marks omitted). The Rules encourage litigants to seek a stay pending appeal in the district court, Fed. R. App. P. 8(a)(1), and the applicable standard "does not require the trial court to change

- 5 -

its mind or conclude that its determination on the merits was erroneous." *St. Agnes Hosp. of City of Baltimore, Inc. v. Riddick*, 751 F. Supp. 75, 76 (D. Md. 1990); *see St. Jude Med., Inc. v. Access Closure, Inc.*, 2012 WL 12919351, at *1 (W.D. Ark. Oct. 2, 2012) (district court "is not required to predict its own reversal merely to find a sufficient showing of success on the merits"). Rather, the appeal must only "raise[] serious and difficult questions of law in an area where the law is somewhat unclear." *St. Agnes*, 751 F. Supp. at 76 (quoting *Goldstein v. Miller*, 488 F. Supp. 156, 173 (D. Md. 1980)).

This case clearly raises serious and difficult issues of law. Indeed, this Court itself recognized that Defendants' arguments were not unreasonable and underscored "the complexity and novel nature of this case." Dkt. 57 at 30. There is at least a fair chance that the Eighth Circuit will resolve the complex and novel issues here differently and hold that the federal removal statute applies. *Cf. Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (presence of "a novel and admittedly difficult legal question weighs in favor of a stay"); *see also Northrop Grumman.*, 2016 WL 3346349, at *3 ("[A] true issue of first impression … weighs in favor of granting a stay because clear precedent from the Court of Appeals does not dictate the outcome of the substantive issue.")

To begin with, there is at least a reasonable likelihood that the Eighth Circuit will find that Tyson acted under federal direction. As this Court acknowledged, Tyson was "in regular contact with DHS and USDA regarding continued operations of its facilities at the early stages of the COVID-19 pandemic." Dkt. 57 at 25. The Declaration of Barbara Masters, and other materials in the briefing, established that this "regular contact" included the following:

- Tyson is designated as part of the nation's critical infrastructure with plans and chains of authority for continued operations in the event of emergencies and disruptions.

- 6 -

- Upon the declaration of a national emergency, the White House issued guidance that employees in "critical infrastructure industr[ies]" have a "special responsibility to maintain [their] normal work schedule."

- Among many aspects of federal coordination, DHS facilitated designating the essential Tyson employees who would keep working along with providing protective equipment.

- USDA facilitated the presence of federal Food Safety Inspection Service (FSIS) employees at Tyson's facilities so that the facilities could keep operating, and Congress provided supplemental funding for those federal employees to be present as facilities continued operating.

- Both the President and Vice President met with Tyson and other critical infrastructure food suppliers and directed them to continue operating.

There is no federal officer removal case cited in the briefing or in the remand order rejecting federal jurisdiction in the face of that kind of high-level, executive involvement with and specific direction of a private actor in the midst of a national emergency, and there is at least a reasonable likelihood that the Eighth Circuit might find these circumstances sufficient to justify federal officer removal. Indeed, it appears to be undisputed that Defendants would likely be entitled to federal officer removal based on events arising after the April 28, 2020 Defense Production Act order was issued. The Eighth Circuit could readily conclude that the federal government's instructions to Tyson before that date likewise qualify this case for federal officer removal, even if they were not issued with the same formality. *See, e.g.*, *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir. 1976) (explaining that the government can gain supplies needed under the Defense Production Act through "more informal" and "less direct" means than written directives); *see also Maryland v. Soper (No. 1)*, 270 U.S. 9 (1926) (informal orders from federal law enforcement can justify federal officer removal); *CRGT, Inc. v. Northrop Grumman Sys. Corp.*, Civ. A.

- 7 -

No. 1:12-cv-554, 2012 WL 3776369 (E.D. Va. Aug. 28, 2012) (same for federal contracting).[2]

Tyson also has a fair chance of prevailing on appeal in showing a causal connection between the federal directions under which it acted and Plaintiffs' claims. As this Court recognized, that element does not require that the federal directions at issue directly caused the plaintiff's injury; it requires only "a connection or association" between the two. Dkt. 57 at 24 (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017)). In assessing that causal connection, moreover, a court must credit the defendant's theory of the case, not the plaintiff's. *See Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 432 (1999); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014) ("In assessing whether a causal nexus exists, we credit the defendant's theory of the case."); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) ("We credit Defendants' theory of the case when determining whether a causal connection exists.").

Tyson's theory of the case is that from the emergency declaration on March 13 onward, the federal government had been directing Tyson as critical infrastructure to continue operations, subject to CDC guidance, to supply food to a nation where some people were panicking regarding shortages, and that the Defense Production Act order simply confirmed that ongoing federal direction. Crediting that theory of the case, the Eighth Circuit could readily conclude that Tyson showed an adequate causal connection between the relevant federal directions and Plaintiffs' claims. As this Court acknowledged in its remand order, the complaint repeatedly alleges that Tyson should have shut down Waterloo (as well as challenging other actions by

---

[2] The Eighth Circuit could likewise readily conclude that, as Defendants have argued, a defendant need only allege facts showing that it is "plausible" that the defendant was acting under federal direction. *See Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018) (applying "the federal pleading standards" to review a notice of removal, and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (pleading standard for removal mirrors pleading standard for complaints); *cf.* Dkt. 57 at 17 n.4.

- 8 -

Tyson). Dkt. 57 at 27. Those allegations that Tyson should have shut down Waterloo are enough to show the necessary causal connection, since "Section 1442(a)(1) authorizes removal of the entire case *even if only one of the controversies* it raises involves a federal officer or agency." 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3726 (4th ed.) (emphasis added); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 n.4 (5th Cir. 2018) (same).[3] The fact that Plaintiffs may also have included other allegations challenging other aspects of Tyson's conduct is irrelevant; the entire case is removable because of the shutdown allegations.

Likewise, the Eighth Circuit readily could conclude that the necessary causal connection exists whether or not the federal directions at issue here required Tyson to act in a manner that state law deems negligent. *Cf.* Dkt. 57 at 27 (finding no causal connection because "[n]o federal officer directed Tyson to keep its Waterloo facility open in a negligent manner"). As noted above, the causal nexus standard for federal officer removal requires only a "connection" or "association" between the federal direction and the plaintiff's claims, *see* Dkt. 57 at 24; it does not require that the federal direction directly cause the plaintiff's claimed injury. The Eighth Circuit could readily find that broad standard satisfied here.

Finally, there is a reasonable likelihood that the Eighth Circuit will conclude that Defendants have advanced a colorable federal defense of preemption under the FMIA and under the federal directions leading up to the Defense Production Act order. The existing federal regulations under the FMIA show the regulatory domain and scope of the *federal* government's power, which in turn sets the regulatory domain of state and local government under the express preemption clause of the FMIA. Express preemption under the FMIA is a zero-sum calculation: if states and

---

[3] That causal connection is further strengthened by Plaintiffs' other allegations, which recognize the federal government's involvement through the declaration of a national emergency in March and the existence of applicable federal regulations and guidance. *See* Compl. ¶¶ 51, 119(aa).

- 9 -

localities can impose upon meat processing facilities the kinds of duties that Plaintiffs are claiming, then the U.S. Department of Agriculture *cannot* impose such standards. *See Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459-60 (2012) (FMIA preemption provision does not permit any state regulation within "the scope of the Act," even if it is "non-conflicting"). But the U.S. Department of Agriculture plainly believes it *can* impose standards related to infectious diseases under the FMIA, because such regulations already exist. *See, e.g.*, 9 C.F.R. §§ 381.36(f)(1)(vi), 416.5(b)-(c). There is at least a fair chance that the Eighth Circuit will agree with the Department of Agriculture, and thus will conclude that state tort law is preempted in this area. Likewise, there is at least a fair chance that the Eighth Circuit will conclude that Defendants have a colorable federal defense based on their assertion of preemption under the federal directions and guidance leading up to the Defense Production Act order, which required Tyson to remain open in compliance with federal law—not with state and local law. *See* Dkt. 16 at 18. As such, Defendants have adequately shown a reasonable likelihood of success on the merits in its forthcoming appeal of the novel and complex issues in this case.

### B. Defendants face irreparable harm absent a stay.

Defendants also face irreparable harm if a stay is denied. As explained above, Congress has explicitly granted defendants who invoke federal officer removal a statutory right to appeal an adverse remand order. 28 U.S.C. § 1447(d); *see supra* pp 3-5. For that right to be meaningful, the reviewing court must be able to "take a fresh look at the decision of the trial court *before* it becomes irrevocable." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) (emphasis added). If a stay is denied and the Iowa state court proceeds to adjudicate this litigation while Tyson's appeal from the remand order is pending, Tyson will be irrevocably deprived of its asserted right to defend against Plaintiffs' claims only in federal court. There is no

- 10 -

way to unring the bell or compensate Defendants for the time and expense spent litigating in state court if their right to removal is vindicated on appeal. That is precisely why "[s]everal other courts have recognized that where the pending appeal addresses remand of a case initially removed pursuant to 28 U.S.C. § 1442, a stay is appropriate to prevent rendering the statutory appeal right 'hollow.'" *Northrop Grumman*, 2016 WL 3346349, at *4; *see supra* pp. 3-5.

Depriving Defendants of their asserted right to have this case tried only in federal court unquestionably constitutes irreparable harm. Absent a stay, the parties will be forced to litigate this case on three parallel tracks at once: not only in a federal appeal and Iowa Workers' Compensation proceedings, but also in duplicative state court litigation. That threat of unnecessary and duplicative simultaneous litigation qualifies as irreparable harm and provides adequate grounds for a stay. *See, e.g.*, *Jock v. Sterling Jewelers, Inc.*, 738 F.Supp.2d 445, 448 (S.D.N.Y. 2010) (recognizing that "the likelihood of unnecessary, duplicative litigation can warrant a stay"); *Flowserve Corp. v. Burns Int'l Servs. Corp.*, 423 F.Supp.2d 433, 439 (D. Del. 2006) (granting injunction to avoid "duplicative litigation and the squandering of judicial resources"); *see also Northrop Grumman*, 2016 WL 3346349, at *3-4.

### C. The balance of hardships favors granting a stay.

By contrast, Plaintiffs will suffer no meaningful harm if a stay is granted. Plaintiffs suffer no harm from having their ability to litigate in state court delayed while the Eighth Circuit decides the already docketed appeal, because as Defendants explained in support of their motions to dismiss, Plaintiffs have no basis for litigating tort claims in state court at all. Plaintiffs allege a workplace injury, and the exclusivity of Iowa's Workers' Compensation system means that Plaintiffs should be presenting any claim there, not in state (or federal) court.[4] In fact, representatives

---

[4] Plaintiffs are also entitled to seek discovery on their claims through the Iowa Workers' compensation system. *See, e.g.*, Iowa Admin. Code § 876-4.2-86.

- 11 -

Case 6:20-cv-02055-LRR-KEM   Document 61-1   Filed 01/08/21   Page 12 of 16

of Ms. Buljic, Mr. Garcia, and Mr. Ayala have already asserted workers' compensation claims on their behalves. In those proceedings (as in this case), Tyson has responded that Plaintiffs have thus far failed to establish contraction of COVID-19 due to employment with Tyson, rather than, for example, from community spread. That causation issue (among others) has not yet been adjudicated by the Iowa Division of Workers' Compensation, and Plaintiffs have not yet exhausted administrative remedies before that agency. *See*, *e.g.*, *Roland v. Annett Holdings, Inc.*, 940 N.W.2d 752, 761 (Iowa 2020) ("The workers' compensation commissioner has exclusive jurisdiction over alleged violations of Iowa Code chapter 85 … and the district court lacks subject matter jurisdiction over a civil action alleging statutory violations by an employee who failed to exhaust his administrative remedies.").

Given those pending issues before the Iowa Division of Workers' Compensation, a stay of any state court proceedings in this case would be appropriate in any event regardless of a federal stay to facilitate a federal appeal. *See, e.g., Reedy v. White Consol. Indus., Inc.*, 503 N.W.2d 601, 604 (Iowa 1993) ("We believe, however, that, within the context of a bad-faith tort claim based on failure to provide workers' compensation benefits, the goal of having material issues of benefit entitlement decided in the first instance by the industrial commissioner is best handled through a discretionary abstention policy that operates to delay the consideration of those issues by a court."); *Pajazetovic v. Tyson Fresh Meats Inc.*, Case No. LACV139839, Order on Motion to Dismiss (Iowa Dist. Ct. for Black Hawk Cnty., Sep. 28, 2020) (granting stay pending completion of workers' compensation proceedings). Because Plaintiffs have no legal right to proceed in state court due to the exclusivity of Iowa's Workers' Compensation system and the pending claims, there is no harm to Plaintiffs in staying the remand order.

In all events, even if state law permitted Plaintiffs to litigate their tort claims in state court, Plaintiffs would still suffer no meaningful delay from a stay pending

- 12 -

Case 6:20-cv-02055-LRR-KEM   Document 61-1   Filed 01/08/21   Page 13 of 16

appeal. Defendants do not seek to delay or extend the appellate proceedings, so there is no reason to think any delay occasioned by a federal appeal would be substantial. In fact, Defendants have already filed a notice of appeal, the appeal has been docketed, and a briefing schedule has been set. Defendants' opening brief on appeal is due on February 16, and Defendants are open to further expedition if the parties can agree or the Eighth Circuit deems further expedition appropriate. The brief delay that is necessary to vindicate a statutory appellate right is not substantial, especially where workers' compensation proceedings will still be proceeding.

### D. A stay is in the public interest.

Finally, granting a stay is in the public interest. This case is one of several cases against Tyson pending in Iowa and elsewhere, and additional cases could be filed. The public interest favors preserving the novel, complex issues of federal officer removal presented by this case for review by the Eighth Circuit, whose ruling can then apply across the pending cases. The fourth *Nken* factor thus weighs in favor of a stay, in light of the public interest in ensuring the most efficient use of judicial resources and the best chance of uniform treatment across cases.

### CONCLUSION

Based upon the foregoing, a stay of the Court's remand order is warranted.

Respectfully submitted,

/s/ Kevin J. Driscoll
Kevin J. Driscoll            AT0002245
**FINLEY LAW FIRM, P.C.**
699 Walnut Street, Suite 1700
Des Moines, Iowa 50309
Telephone: 515.288.0145
Facsimile:  515.288.2724
Email: kdriscoll@finleylaw.com

Christopher S. Coleman
(Admitted *pro hac vice*)
**Perkins Coie LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: 602.351.8000
Facsimile:  602-648.7000
Email: CColeman@perkinscoie.com

Mary Gaston
(Admitted *pro hac vice*)
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000
Email: MGaston@perkinscoie.com

**ATTORNEYS FOR DEFENDANTS TYSON FOODS, INC., TYSON FRESH MEATS, INC., JOHN H. TYSON, NOEL W. WHITE, DEAN BANKS, STEPHEN R. STOUFFER, and TOM BROWER**


 /s/ Nicholas Klinefeldt
Nicholas Klinefeldt
**FAEGRE DRINKER BIDDLE & REATH LLP**
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: 515.447.4717
Facsimile:  515.248.9010
Email:
    nick.klinefeldt@faegredrinker.com

**ATTORNEYS FOR DEFENDANTS TOM HART, CODY BRUSTKERN, JOHN CASEY, BRET TAPKEN, and JAMES HOOK**

## CERTIFICATE OF SERVICE

This is to certify that, on January 8, 2021, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF system as follows:

Thomas P. Frerichs
**Frerichs Law Office, P.C.**
106 E. 4th Street, P. O. Box 328
Waterloo, Iowa 50704-0328
319.236.7204 / 319.236.7206 (fax)
tfrerichs@frerichslaw.com

John J. Rausch
**Rausch Law Firm, PLLC**
3909 University Ave., P. O. Box 905
Waterloo, Iowa 50704-0905
319.233.35557 / 319.233.3558 (fax)
rauschlawfirm@dybb.com

Mel C. Orchard, III
G. Bryan Ulmer, III
Gabriel Phillips
**The Spence Law Firm, LLC**
15 S. Jackson Street
P. O. Box 548
Jackson, Wyoming 83001
307.337.1283 / 307.337.3835 (fax)
orchard@spencelawyers.com
ulmer@spencelawyers.com
phillips@spencelawyers.com

*Attorneys for the Plaintiffs*

Nicholas Klinefeldt
**Faegre Drinker Biddle & Reath LLP**
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
515.447.4717 / 515.248.9010 (fax)
nick.klinefeldt@faegredrinker.com

*Attorneys for Defendants Tom Hart, Cody Brustkern, John Casey, Bret Tapken, and James Hook*

      /s/ Kevin J. Driscoll